In re Estate of Robert Royce Jennings, Deceased.

368 S. W. 2d 289

(*Nashville,* December Term, 1962.)

Opinion filed June 4, 1963.

Fitzhugh, Clay & Hodges, Memphis, for appellant-petitioner Methodist Hospital.

Busby, McKnight & Martin, Memphis, for respondent-administratrix Mrs. Charlie Ruth Robinson.

MR. ROBERT S. CLEMENT, Special Justice, delivered the opinion of the Court.

This appeal comes to this Court from the Probate Court of Shelby County, Tennessee, and presents only a single question of law, which seems to be of first impression in this State, as to whether the proceeds recovered by the Administratrix under a Medical Payment Clause of a liability insurance policy are free from the claims of creditors, and especially from the claim of the Methodist Hospital for services rendered to the deceased following an automobile accident prior to his death.

Robert Royce Jennings was a passenger in an automobile on August 24, 1960, being driven by one John Barthol which went out of control and seriously injured Jennings. He was hospitalized at the Methodist Hospital in Memphis until he died on September 15, 1960. The deceased incurred a hospital bill of $3,638.10, no part of which has been paid.

On August 17, 1961, the Administratrix of Jennings' estate, Mrs. Charlie Ruth Robinson, filed suit in the Circuit Court of Shelby County, Tennessee, against the driver, John Barthol, seeking a recovery of $150,000.00 for the death of Jennings. In her Declaration, the Administratrix sued for damages for the wrongful death, including damages by the way of *hospital expenses*. Subsequent developments revealed that the said John Barthol's insurance was limited to $5,000.00, plus an additional $500.00 for medical expenses.

There are certain stipulations in the record all of which need not be copied herein, but we think it advisable to set

out some of the more pertinent parts of the stipulations, which are as follows:

"7. Barthol was insured under a policy issued by the Aetna Casualty Company. The said policy afforded separate coverages for liability and medical services for which separate premiums were paid. Pertinent portions of the covering provisions are as follows:

"The Aetna Casualty Company agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to all of the terms of this policy:

## "PART I—LIABILITY

"Coverage A—Bodily Injury Liability; * * * To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages of:

"A. bodily injury, sickness or disease, including death resulting therefrom, hereafter called 'bodily injury', sustained by any person;

*  *  *  *  *  *

arising out of the ownership, maintenance or use of the owned automobile * * *.

## "PART II—EXPENSES FOR MEDICAL SERVICES

"Coverage C—Medical Payments: To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, X-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional, nursing and funeral services:

*  *  *  *  *  *

"Division 2. To or for any other person who sustains bodily injury, caused by accident, while occupying

"(a) the owned automobile, while being used by the name insured, by any resident of the same household or by any other person with permission of the named insured; * * *.

"8. The Insurance Company adjuster represented to Attorney McKnight that in this case the Company's limit of liability under the bodily injury feature of the policy was $5,000 and its limit of liability under the medical payments clause was $500.

"9. Negotiations between Attorney McKnight and Aetna's adjuster resulted in a settlement and dismissal of the Circuit Court suit, whereupon the Aetna Company paid to the administratrix the sum of $4,000.00 under the bodily injury clause of its policy and paid $500.00 under the medical payments clause of its policy, and all claims against the Aetna Company were released, and the suit in the Circuit Court was dismissed at defendant's costs. Said payments were made by separate drafts, copies being attached as exhibits I and II; and separate releases were taken, copies being attached as exhibits III and IV. Said drafts were accepted and said releases executed concurrently by the Plaintiff and her attorney as a complete compromise settlement of plaintiff's alleged cause of action set forth in the declaration filed in the Circuit Court.

"10. The adjuster wanted to pay the $500.00 direct to the Methodist Hospital, but Mr. McKnight the administratrix's attorney, viewed this payment as part of

the overall settlement, and required the adjuster to pay it to the administratrix.''

The Probate Judge held that the $500.00 for medical services paid by the Insurance Company to the Administratrix is exempt from creditor's claims under T.C.A. Section 20-607 and entered an Order in favor of the Administratrix. It is from this action that the Methodist Hospital excepted and has appealed to this Court.

Therefore, the only question before us is whether or not the $500.00 paid by the Insurance Company to the Administratrix is free from the claims of creditors.

T.C.A. Section 20-607 reads as follows:

''*Injury resulting in death—Succession to cause of action.*—The right of action which a person, who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished by his death, but shall pass to his widow, and, in case there is no widow, to his children or to his next of kin; or to his personal representative, for the benefit of his widow or next of kin; or to his natural parents or parent or next of kin if at the time of death decedent was in the custody of the natural parents or parent and had not been legally surrendered by them, otherwise to his or her legally adoptive parents or parent, or to the administrator for the use and benefit of the said adoptive parents or parent; the funds recovered in either case to be free from the claims of creditors. In the case of the death of a married woman, such right of action shall pass to the surviving husband.''

Thus, it appears that this Court must decide whether the $500.00 in question was paid by the Insurance Company for the account of the wrongdoer on account of the wrongful act which caused the death of the deceased; or was this $500.00 payment for medical services rendered to deceased by a third party.

Counsel has not cited us to a Tennessee case where the Supreme Court has heretofore considered this matter, therefore, we must look to the contract, to our own statutes and to authorities from other states.

First it should be noted that the liability for medical payments is set out separately from other liability under the policy. It should be noted that in Part II, which deals with the coverage for medical payments, the Company contracts to pay for certain reasonable medical expenses but does not specify that the payments shall be made to the insured or to a third party, but uses the words, "To pay all reasonable expenses" and in Division 2, *"To or for any other person* who sustains bodily injury caused by accident". Thus, we are confronted with the problem as to whether or not the injured party had control of the funds to such an extent that he might elect to accept the payment himself and then pay the party who rendered the service, if he chose to do so, or is the Insurance Company bound to pay for the services directly to the party who furnished same; or are funds so received free from the claims of creditors.

Certainly, the intent of the coverage seems to be that the Insurance Company will pay for the services, but the question remains unanswered and the contract is of little help as to whether or not the injured party may control the payment of said funds.

In the Brief of the appellant, we are cited to the following authority, ''Many of the liability policies now contain the so-called medical endorsement. Under this provision, any passenger or occupant of the insured's car who was injured in an accident and even pedestrians may recover medical expenses up to a stipulated amount, anywhere from five hundred to several thousand dollars per person. Since such recovery is completely independent of liability on the part of the assured, insurance under the medical endorsement clause is closely akin to a *personal accident policy* * * * such provision is a separate obligation of insurer independent of its obligation to pay sums of money as damages under the liability features of the contract. Liability for such payment is in no way dependent upon negligence of the insured.'' (Appleman Insurance Law and Practice, Section 4896.)

Appellant cites us to another case, *Severson, Admr. v. Milwaukee Insurance Company*, 1953, 265 Wis. 488, 61 N.W.2d 872; 42 A.L.R.2d 976, in which the Court held that the liability coverage and medical coverage contained in the same policy constituted separate contracts. There seems to be no question about this as an additional premium is charged for medical payments.

Now, if we follow the authorities cited by appellant and especially Appleman, we must conclude that the medical coverage afforded under the policy is in the nature of a personal accident policy which provides certain limited medical payments. This being true, could the deceased Robert Royce Jennings have collected these payments directly from the Insurance Company had he survived the accident? We believe that he could have. Now if the Company was liable to Robert Royce Jennings to the limit of their liability for medical coverage, would

the proceeds have been exempt from the claims of creditors in his hands?

T.C.A. Section 26-213 provides as follows:

"There shall be exempt from the claims of all creditors, and from execution, attachment, or garnishment, any sum or sums of money which may hereafter become due and payable to any person, who is a resident and citizen of this state, from any insurance company or other insurer, under the terms and provisions of any contracts of accident, health, or disability insurance insuring the assured against loss by reason of accidental personal injuries, or insuring said assured against loss by reason of physical disability resulting from disease."

Thus, it appears that if a medical payment is to be classified as accident insurance, then the same would have been exempt from the claims of creditors, from execution, attachment or garnishment in the hands of Robert Royce Jennings had he lived.

Now if the Legislature of 1937 had stopped at this point, our decision might have been different. T.C.A. Section 26-214 provides as follows:

"In the event of the death of any such person so insured as set out in 26-213, any sum or sums of money so due and payable at the time of the death of the insured shall likewise be exempt from the claims of all creditors and from execution, attachment, or garnishment, in the same manner as provided."

The writer of this opinion cannot help but recall the Biblical story of the man who was traveling from Jerusalem to Jericho—was wounded and fell by the wayside.

Some passed him by but finally a Good Samaritan came along who took him to an inn and told the inn-keeper to keep him—to care for him and when he returned, he would pay him what was due. We would like to decide this case in keeping with the rule which was laid down many years ago by the Good Samaritan, but in view of Chapter 287 of the Public Acts of 1937, T.C.A. Section 26-213 and 26-214, we hold that the proceeds from this contractual coverage for medical payments are exempt from the claims of creditors and, while we agree that the Judge of the Probate Court reached the right decision, we believe that his decision should have been based on the foregoing sections rather than T.C.A. 20-607.

For the reasons stated, the judgment of the lower court is affirmed. The costs of the appeal are adjudged against the Methodist Hospital and its bondsman.