# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 8, 2013 Session

## IN RE ESTATE OF CLENDENON

**Appeal from the Chancery Court for Greene County**
**No. 2010P167      Thomas R. Frierson II, Chancellor**

---

### No. E2013-00206-COA-R3-CV-FILED-SEPTEMBER 30, 2013

---

This case involves a claim filed against the Estate of Todd Clendenon. Elite Oncology Medical Group filed the claim seeking payment for medical treatment and services rendered to the decedent. Barbara Jean Clendenon, the decedent's wife and his Personal Representative, moved the probate court to designate as "exempt funds" the monies paid to the decedent under his health insurance policy. The payments included those pertaining to the treatment and services the decedent received from Elite. Following a hearing, the trial court granted the motion. The court determined that payments made by the health insurance carrier that were deposited into the Estate's bank account after the death of the decedent were exempt from the claims of creditors pursuant to Tenn. Code Ann. § 26-1-110 (2010). Elite appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Jessica C. McAfee, Greeneville, Tennessee, for the appellant, Elite Oncology Medical Group.

Ronald W. Woods and Brandy M. Burnette, Greeneville, Tennessee, for the appellee, Barbara Jean Clendenon, Personal Representative of the Estate of Todd P. Clendenon.

**OPINION**

I.

The salient facts are not in dispute. The decedent, a Tennessee resident who suffered from cancer, died from his illness on August 21, 2010, at the age of 29. At the time of his death, he was insured under a health insurance policy issued to him by BlueCross BlueShield of Tennessee ("BCBS"). In the months before his death, the decedent was treated by physicians affiliated with Elite at its facility in Los Angeles. Elite submitted claims to BCBS for the services it provided. Under the terms of the decedent's policy, the claims were processed and paid at the rate provided for "out of network" care. Also pursuant to the policy, BCBS sent the appropriate payments on the claims directly to the decedent rather than to the out of network provider. Along with each payment by BCBS, the insurer sent the decedent an "Explanation of Benefits" reflecting the submitted claim, the service provider, the particular treatment or service provided, and the amount paid on the claim. In all, Elite filed 16 claims in the total amount of $96,219 for "hyperthermia and radiation therapy" services provided to the decedent between June 24, 2010, and August 9, 2010.

On October 5, 2010, the Personal Representative sent written notice to Elite that it had been identified as a potential creditor of the Estate. The letter instructed Elite that creditors of the decedent were required to file their claims with the probate court on or before January 9, 2011. On October 19, 2010, Elite appropriately notified the probate court of its claims against the Estate in the stated total amount. Elite further provided a copy of its "agreement" with the decedent whereby it requested that the decedent "submit to Elite . . . within *three (3) business days of receipt* check remittances from BCBS . . . with the accompanying Explanation of Benefits . . . ." (Emphasis in original.) Decedent signed the document which further stated: "It is understood that failure to do so will constitute non-payment of medical obligations with us and, if such is the case, you will be held responsible for the payment of your account." As of the time of trial, Elite had received no payments toward the decedent's bill.

On October 11, 2011, the Personal Representative filed a "Sworn Motion to Designate Receipts as Exempt Funds Pursuant to T.C.A. § 26-2-110." The motion requested that the court deem all payments from BCBS to the decedent made under the terms of the decedent's policy as "exempt insurance benefits" pursuant to Section 26-2-110. As such, the monies would be exempt from all creditors' claims and would pass to the decedent's heirs by operation of law. According to a summary, BCBS sent checks totaling $46,629.04 to the decedent as payment of his medical expense claims. The payments were deposited after his death. Elite moved the court to dismiss the motion.

-2-

A hearing on the Personal Representative's motion was held on December 4, 2012. The only parties to appear were the Personal Representative and Elite, both represented by counsel. At the conclusion of the hearing, the trial court held, in relevant part, as follows:

> [T]he Court finds that there is no contested issue as to the validity of the claim filed by Elite . . . as no exception was filed and that the sole contested issue . . . is a determination of whether or not funds received by the Personal Representative pursuant to the decedent's health insurance policy with [BCBS] (the majority of which are attributable to medical services rendered by Elite . . . ) are exempt from the claims of creditors, including Elite . . ., pursuant to T.C.A. § 26-2-110. With respect to this issue, the Court finds that said funds (totaling $46,629.04) are exempt funds pursuant to T.C.A. § 26-2-110 and that sworn motion should be granted.
>
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that all benefits paid by [BCBS] to or for the benefit of the decedent pursuant to the terms and provisions of his health insurance policy are exempt insurance benefits under T.C.A. § 26-2-110 and are thus exempt from the claims of creditors and pass by operation of law to the decedent's heirs at law.

Elite filed a timely notice of appeal.

## II.

Elite raises the following issues for our review:

> Whether the filing of the Motion to Designate Receipts as Exempt Funds was filed untimely and the issue waived.
>
> Whether the trial court erred in exempting estate assets from payment to creditors pursuant to Tenn. Code Ann. § 26-2-110 when the statute does not pertain to estate administration but to post-judgment execution and garnishment.

Whether the trial court erred in interpreting the statute to include health insurance benefits when the language has limiting construction.

## III.

In cases decided by a trial court, sitting without a jury, our review is de novo upon the record of the proceedings below. The record comes to us with a presumption of correctness as to the trial court's factual determinations – one that we must honor unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Nave v. Nave*, 173 S.W.3d 766, 770 (Tenn. Ct. App. 2005); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn.1995). The trial court's conclusions of law, such as the interpretation of a statute, are reviewed de novo, with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

## IV.

Elite essentially argues that the Estate's motion to designate the funds received from BCBS as "exempt funds" pursuant to Tenn. Code Ann. 26-2-110 comes too late. Generally stated, the statute provides an exemption from the claims of creditors for specified insurance benefits. Elite asserts that, because *no exception to its claim* was timely filed, its claim became a valid judgment against the Estate. Elite concludes that the Estate thereby *implicitly* waived its right to argue that the health insurance payments are exempt from the claims of creditors. We conclude that Elite is only partially correct.

The time for potential creditors to file claims against the decedent's Estate ran from September 9, 2010, until January 9, 2011. Elite timely submitted its claim in October 2010. The Estate did not file an exception to Elite's claim. Considering the relevant facts in light of Elite's argument, two things are readily apparent. First, as Elite correctly contends, its claim is a valid, binding obligation of the Estate. "Failure to except to a claim amounts to an admission of its justness; and the claim becomes, in effect, a judgment against the estate. . . ." *Needham v. Moore*, 292 S.W.2d 720, 723 (Tenn. 1956)(quoting *Pritchard, Wills and Estates*, Phillips, Vol. 2, p. 268). The trial court correctly so held and the Estate concedes this point.

The problem lies with the second part of Elite's argument. Elite concludes that by failing to file an exception to its claim, the Estate waived its right to assert that the health insurance benefits the Estate had received are exempt from the cumulative claim of Elite. The Estate responds that by filing the motion to designate the health insurance receipts as exempt funds, the Personal Representative "was seeking relief from the Court in order to

define the pool of assets from which [Elite's] judgment could be satisfied." The Estate characterizes the motion as a form of post-judgment relief that recognizes the distinction "between the process for *obtaining* a final judgment and the process for *enforcing* or *collecting* on [a] final judgment. . . ." (Emphasis added.) We find the Estate's argument to be persuasive.

In short, we agree with the Estate's conclusion that the "failure to file an exception to [Elite's] [c]laim does not preclude the Personal Representative from seeking post-judgment determinations pertaining to the [c]laim." As the Supreme Court has observed, "claims unexcepted to become the equivalent of judgments against the estate, excepting of course that the right to an execution thereon does not follow." ***Warfield v. Thomas' Estate***, 206 S.W.2d 372, 375 (Tenn. 1947)(quoting *Higgins' Administration of Estates in Tennessee*, Section 126(a), p. 97). By not filing an exception to Elite's claim, the Estate has simply acknowledged the validity of the debt. The issue of whether certain funds of the Estate are *exempt* from claims of creditors is a totally separate issue from that of the validity of the debt. The acknowledgment of the validity of the debt does not carry with it an implication that Elite is entitled to share in all of the monies in the Estate to satisfy its claim. This issue is found adverse to the position of Elite.

V.

A.

By its remaining two issues, Elite focuses on the application and construction of the insurance benefits exemption set forth in Tenn. Code Ann. § 26-2-110. Elite's argument is essentially two-fold: (1) The statute is not applicable in the context of estate administration cases, and (2) limiting language within the statute makes it clear that the stated exemption does not apply to benefits paid under a "typical" health insurance policy. In this section, we address both issues.

As pertinent to our review, Tenn Code Ann. § 26-2-110 provides, in relevant part, as follows:

> (a) There shall be exempt from the claims of all creditors, and from execution, attachment, or garnishment, any sum or sums of money which may hereafter become due and payable to any person, who is a resident and citizen of this state, from any insurance company or other insurer, under the terms and provisions of any contracts of accident, health, or disability insurance insuring the assured against loss by reason of

accidental personal injuries, or insuring the assured against loss by reason of physical disability resulting from disease.

(b) In the event of the death of any such person so insured as set out in subsection (a), any sum or sums of money so due and payable at the time of the death of the insured shall likewise be exempt from the claims of all creditors and from execution, attachment or garnishment, in the same manner as provided in §§ 56-7-201, 56-7-203.

The issues before us require an examination of section 26-2-110. The Supreme Court has set forth principles guiding our review:

Our role in construing a statute is to "ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." To do so, we focus initially on the statute's words, giving these words their natural and ordinary meaning in light of their statutory context. We must avoid any "forced or subtle construction that would limit or extend the meaning of the language." Every word in a statute is presumed to have meaning and purpose, and the statute must be construed in its entirety.

***Shore v. Maple Lane Farms, LLC***, E2011-00158-SC-R11-CV, 2013 WL4428904 at *11 (Tenn. 2013)(internal citations omitted).

B.

First, Elite asserts that the trial court erred when it found section 26-2-110 applicable to the present case. Elite notes that the present case involves a matter of estate administration – "not a situation where a creditor is attempting to garnish wages of a judgment debtor." Elite further submits that the statute "does not discuss what happens to estates when money is paid to the decedent prior to his death . . . for the benefit of medical providers of treatment and services of [the] decedent *prior* to his death." (Emphasis in original.)

A plain reading of subsection (a), above, reflects that the statute provides to residents of this state an exemption for insurance benefits from "the claims of *all* creditors, *and* from execution, attachment, or garnishment. . . ." (Emphasis added.) The quoted language directly contradicts Elite's position that the statute addresses only "post-judgment remedies by judgment debtors." Elite offers no authority for its position that, where insurance benefits are

concerned, cases involving claims against the assets of an estate, such as the situation presented here, are not properly considered within the "claims of all creditors" language. In our view, subsection (b) does address the exemption relative to insurance benefits that are paid out after the insured's death and received into his estate. The statute expressly provides that "any sum or sums of money so due and payable at the time of the death of the insured shall likewise be exempt from the claims of all creditors."

In *In re Jennings Estate*, 212 Tenn. 107, 368 S.W.2d 289 (1963), the Supreme Court applied the predecessor statutes to Section 26-2-110 in the context of an estate matter.[1] In *Jennings*, the insured, Barthol, held an insurance policy that provided separate coverage for liability and medical services. *Id*., 368 S.W.2d at 289. Coverage for medical services was limited to $500. The insured was responsible for a car accident that seriously injured Jennings and led to his death. *Id*. Jennings' personal representative recovered $500 in medical expenses paid under the policy. Methodist Hospital claimed it was entitled to the $500 as payment for medical services it rendered to Jennings before his death. *Id*. The Court held that the proceeds recovered by Jennings' personal representative under the medical services provision of the automobile liability policy were exempt from claims of creditors – including the hospital's claim for medical services it rendered to Jennings as a result of the car accident.

---

[1] *See* 1937 Tenn. Acts ch. 287, §1, §2; Tenn. Code Ann. §§ 26-213 and 26-214 (repealed). Former section 26-213 provided as follows:

> There shall be exempt from the claims of all creditors, and from execution, attachment, or garnishment, any sum or sums of money which may hereafter become due and payable to any person, who is a resident and citizen of this state, from any insurance company or other insurer, under the terms and provisions of any contracts of accident, health, or disability insurance insuring the assured against loss by reason of accidental personal injuries, or insuring said assured against loss by reason of physical disability resulting from disease.

Former section 26-214 provided as follows:

> In the event of the death of any such person so insured as set out in 26-213, any sum or sums of money so due and payable at the time of the death of the insured shall likewise be exempt from the claims of all creditors and from execution, attachment, or garnishment, in the same manner as provided.

In short, we find nothing to support Elite's position that Tenn. Code Ann. § 26-2-110 "is not meant to be used in estate administration. . . ." The trial court did not err in applying the statute to the case at bar.

C.

Lastly, Elite asserts that standard policies of health insurance, like the one the decedent had, are not properly included among the insurance policies set out in Tenn. Code Ann. § 26-2-110. Instead, Elite argues, health insurance policies are intended to protect the insured against the risk of incurring medical expenses. As such, Elite concludes, payments under a health insurance policy do not fall within the "limiting" language of Tenn. Code Ann. § 26-2-110, *i.e.*, the following language:

> insuring the assured against loss by reason of accidental personal injuries, or insuring the assured against loss by reason of physical disability resulting from disease.

Again, in our view, a reading of the statute is dispositive. Tenn. Code Ann. § 26-2-110 exempts specified insurance benefits from the claims of creditors – again, this includes "any . . . money . . . due and payable to any person, . . . from any . . . insurer, under the terms and provisions of any contracts of accident, health, or disability insurance *insuring the assured against loss by reason of accidental personal injuries, or insuring the assured against loss by reason of physical disability resulting from disease.*" Tenn. Code Ann. § 26-2-110 (a). In order to give meaning to each of the referenced types of insurance policies set out in the statute – "accident, health and disability" – they must be read as addressing different subjects or risks. We agree with Elite's contention that health insurance policies are designed to protect against – or lessen – the risk of loss resulting from medical expenses an insured may incur. The Code defines health insurance coverage as "benefits consisting of medical care, provided directly, through insurance or reimbursement, or otherwise and including items and services paid for as medical care, under any policy, certificate or agreement offered by a health care entity. . . ." Tenn. Code Ann. § 56-7-109(a)(3). In the case of the decedent, all of the funds at issue were paid to him for medical care received under the terms of his health insurance policy. As we read the "limiting" language, it was designed to apply to, and further define, accident insurance and disability insurance. The limiting language has nothing to do with health insurance as referred to in the statute. Payments under a health insurance policy are exempt from the claims of creditors. As such, we think the payments from BCBS to the decedent clearly fall within the insurance benefits exemption provided in section 26-2-110.

In a nutshell, Tenn. Code Ann. § 26-2-110 exempts from any and all creditors' claims money due to an insured under a policy of health insurance. The trial court correctly held that the exemption applies to the health insurance payments deposited into the decedent's Estate.

VI.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Elite Oncology Medical Group. This case is remanded, pursuant to applicable law, for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE